IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHRIS A. ALFORD,                        )
                                        )
                    Plaintiff,          )
                                        )   CIVIL ACTION
v.                                      )
                                        )   No. 05-2487-KHV-JTR
                                        )
JO ANNE B. BARNHART,                    )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )
_____ )


REPORT AND RECOMMENDATION


Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be REVERSED and the case be REMANDED for further proceedings as discussed herein.

I.   Background

Plaintiff's applications were denied initially and upon reconsideration. (R. 48, 49, 318, 325). Plaintiff requested and was granted a hearing before an Administrative Law Judge (ALJ). (R. 34, 71-72). Plaintiff was represented by an attorney at the hearing, and plaintiff and a vocational expert testified. (R. 34, 331, 332). Shortly thereafter, the ALJ issued a decision in which he found plaintiff is not disabled within the meaning of the Act and denied his applications. (R. 34-42).

In the decision, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date of Oct. 30, 2001. (R. 35). He found that plaintiff has schizoaffective disorder and attention deficit disorder, impairments which are "severe" within the meaning of the Act. Id. The ALJ discussed evidence regarding plaintiff's physical condition, including evidence of "degenerative change at L4-5" (R. 35) and muscle biopsy evidence "significant for skeletal muscle with myopathic features." (R. 35). The ALJ also discussed the opinion of an examining physician which limited plaintiff to ten minutes standing; to no walking, ladders, stooping, or squatting; and to carrying no more than five pounds, but the ALJ did not find any "severe" physical impairments. (R. 36). He found that

-2-

plaintiff has no "impairment that meets or equals the criteria of any listed impairment." (R. 35).

The ALJ determined that plaintiff's allegations of disabling symptoms are not credible. (R. 38-39). He discussed the medical opinions and explained that he gave "substantial weight" to the opinions of the Disability Determination Service physicians and "little weight" to the opinions of plaintiff's treating psychiatrist and of the "examining physician" at the VA who attributed exertional limitations to plaintiff based upon his physical condition. (R. 39-40). The ALJ assessed plaintiff's residual functional capacity (RFC), finding plaintiff has no exertional limitations. (R. 40). Regarding nonexertional limitations, the ALJ found plaintiff "is able to understand, remember, concentrate, and attend to three to four step instructions and tasks. While he may have some difficulty with supervision and may be sensitive to criticism, he would perform best in a setting at tasks that are well defined and allow for easy evaluation and supervision." Id.

Based upon the assessed RFC, the ALJ found plaintiff is unable to perform his past relevant work. Id. Nevertheless, considering the assessed RFC, the testimony of the vocational

-3-

expert, and plaintiff's age, education, and work experience, the

ALJ concluded that there are a significant number of jobs in the

economy of which plaintiff is capable, and determined plaintiff is

not disabled within the meaning of the Act.  (R. 41).  He denied

plaintiff's applications for DIB and SSI.  (R. 42).

Plaintiff sought and was denied Appeals Council review of the

ALJ decision.  (R. 30, 5-7).  Therefore, the ALJ decision is the

final decision of the Commissioner.  (R. 5); Threet v. Barnhart,

353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks

judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C.

§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of

the Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive."  The court must determine whether

the factual findings are supported by substantial evidence in the

record and whether the ALJ applied the correct legal standard.

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but less than a

preponderance, it is such evidence as a reasonable mind might

accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802,

-4-

804 (10th Cir. 1988).  The court may "neither reweigh the evidence

nor substitute [it's] judgment for that of the agency."  White,

287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv.,

933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether

substantial evidence supports the Commissioner's decision,

however, is not simply a quantitative exercise, for evidence is

not substantial if it is overwhelmed by other evidence or if it

constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

     An individual is under a disability only if that individual

can establish that he has a physical or mental impairment which

prevents him from engaging in substantial gainful activity and is

expected to result in death or to last for a continuous period of

at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart v.

Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability

to work must last twelve months).  The claimant's impairments must

be of such severity that he is not only unable to perform his past

relevant work, but cannot, considering his age, education, and

work experience, engage in any other substantial gainful work

existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520,

416.920 (2004).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that

-6-

prevents performance of past relevant work.  <u>Dikeman v. Halter</u>,
245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the national economy within plaintiff's capacity.
<u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in weighing the medical
opinions:  of his treating psychiatrist, Dr. LaFrance; of the
physician who examined him for the Department of Veteran's Affairs
(VA), Dr. McBride; and of the Disability Determination Service
physicians.  Plaintiff claims the ALJ erred at step two in failing
to find skeletal muscle myopathy and degenerative disc disease
"severe" in this case; and erred at step three by failing to
discuss the evidence which shows plaintiff's condition does not
meet or equal a listing, by failing to consider whether
plaintiff's impairments in combination meet or equal a listing,
and by failing to get an updated medical opinion regarding
equivalence or to consider whether plaintiff's mental impairments
might be equivalent to a listing.  Finally, plaintiff claims error
in the RFC assessment in that the ALJ failed to explain his
finding of no exertional limitations and failed to resolve
conflicts between the RFC assessment and the medical opinions.

-7-

The Commissioner argues that the ALJ properly considered and evaluated plaintiff's condition, applied the correct legal standard in his decision, and substantial evidence in the record supports each determination made.  The court begins, as did plaintiff, by considering the ALJ's evaluation of the medical opinions.

**III. Evaluation of Medical Opinions**

Plaintiff claims the ALJ erred in weighing the medical opinions of Dr. LaFrance and Dr. McBride, and of the Disability Determination Service physicians.  Specifically, he argues that the opinion of Dr. LaFrance should have been given controlling weight or, alternatively, should have been adopted even if it did not meet the test for controlling weight.  He argues both that the ALJ did not explain his finding that Dr. LaFrance's opinion is "overly restrictive" (leaving the court unable to review the finding), and that the evidence does not support the ALJ's finding that plaintiff's condition improved with medication.  The Commissioner argues that the ALJ's decision is proper because the ALJ stated reasons for rejecting Dr. LaFrance's opinion are supported by substantial evidence in the record.

-8-

Plaintiff argues that the opinion of a non-examining physician is entitled to the least weight of any medical opinion, cannot be a "contradictory opinion" to that of the treating physician, and, therefore, does not constitute substantial evidence for rejecting the treating physician opinion.  He argues that, contrary to the ALJ's finding, the state agency physicians did not (and are not qualified to) render an opinion regarding exertional limitations.  The Commissioner argues that the ALJ is required by agency policy to consider and explain the weight given to opinions of state agency physicians and was entitled to give these opinions substantial weight since they are supported by the record.

Finally, plaintiff claims the ALJ erred in giving little weight to Dr. McBride's opinion because it is the only opinion regarding physical limitations, and because the evidence does not support the reasons asserted by the ALJ--that the opinion is inconsistent with the medical evidence and with plaintiff's activities of daily living.  The Commissioner argues that the ALJ properly rejected Dr. McBride's opinion because Dr. McBride was a one-time examiner, because "several medical reports . . . were inconsistent with Plaintiff's allegations of a severe physical

impairment" (Comm'r Br., 10)(citing x-rays, MRI, nerve conduction studies, Dr. McBride's note of normal gait, good balance, normal muscle strength, and ability to walk on toes and heels without obvious difficulty), and because the ALJ cited plaintiff's activities which are inconsistent with physical limitations. (Comm'r Br., 10).

**A.    Standard for Evaluating Medical Opinions**

Medical opinions may not be ignored and will be evaluated by the Commissioner in accordance with factors contained in the regulations.   20 C.F.R. §§ 404.1527(d), 416.927(d); <u>Soc. Sec. Ruling</u> (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2006).   A physician who has treated a patient frequently over an extended period of time is expected to have great insight into the patient's medical condition.   <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003).   But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."   <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)).   However, opinions of examining physicians are usually given more weight than the opinions of physicians who have merely reviewed the medical record.   <u>Robinson v. Barnhart</u>, 366

F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d
1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d
407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789
(7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955,
963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's
opinion on the issue(s) of the nature and severity of [the
claimant's] impairment(s) [(1)] is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and
[(2)] is not inconsistent with the other substantial evidence in
[claimant's] case record, [the Commissioner] will give it
controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2);
see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings
111-15 (Supp. 2006).

The Tenth Circuit has explained the sequential nature of the
inquiry regarding a treating physician's medical opinion.  Watkins
v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ
first determines "whether the opinion is 'well-supported by
medically acceptable clinical and laboratory diagnostic
techniques.'"  Id. at 1300 (quoting SSR 96-2p).  If well-supported,
the ALJ must determine whether the opinion is consistent with

-11-

other evidence in the record.  Id. (citing SSR 96-2p).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating physician's opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating physician's opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

## B.   The ALJ's Determination

The ALJ stated that he gave "substantial weight" to the opinions of the Disability Determination Service physicians because the opinions are "supported by and consistent with the evidence of the entire record," (R. 39-40) and because the DDS physicians determined that plaintiff has no exertional limitations but has certain mental abilities and limitations.  (R. 40)(citing Exhibits 6F & 8F).  The ALJ agreed with the limitations as he understood the DDS physicians to state them and adopted them almost verbatim as his RFC assessment.  (R. 40, 41 finding no. 5).  The ALJ recognized that Dr. McBride opined that plaintiff could do sedentary work with no standing greater than ten minutes, but could not walk, squat, stoop, climb ladders, or carry in excess of five pounds for short distances.  Id.  He gave Dr. McBride's

-13-

opinion "little weight" because it is based on a one-time examination, and is not supported by or consistent with the medical evidence or with plaintiff's activities of daily living. Id.

The ALJ gave "little weight" to treating psychiatrist, Dr. LaFrance's Medical Source Statement in which the psychiatrist opined that plaintiff is "markedly limited" in fifteen of twenty mental activities and is "moderately limited" in the remaining five mental activities.  Id.  He discounted Dr. LaFrance's opinion because it is "overly restrictive and inconsistent with the treatment records which indicate that with medication the claimant's concentration improved and his thoughts were more goal-directed."  Id. (citing Exhibit 10F (R. 250-99)(VA treatment records, Jun. 7, 2002 through Feb. 17, 2004)).

**C.   Discussion**

The court reads plaintiff's briefs as an argument that the ALJ improperly weighed the medical opinions in relation to each other and that his conclusions cannot be accepted as consistent with the Commissioner's stated policies and procedures for evaluating medical opinions and cannot be accepted as consistent with Tenth Circuit law.  The court agrees.

-14-

First, the ALJ erred in stating that the DDS physicians "determined that the claimant has no exertional limitations." (R. 40)(citing Ex. 6F, 8F). The exhibits to which the ALJ cites are a "Mental Residual Functional Capacity Assessment" (R. 208-12, Ex. 6F) and a "Psychiatric Review Technique" form. (R. 232-47, Ex. 8F). Each form is used at the state agency level in evaluating mental impairments pursuant to the Commissioner's Psychiatric Review Technique (PRT). 20 C.F.R. §§ 404.1520a, 416.920a. These forms concern only plaintiff's mental functioning and contain no information regarding exertional limitations. Moreover, the forms cited were completed and signed by a psychological consultant, R. E. Schulman, Ph.D. and reviewed by another psychological consultant, R. Blum, Ph.D. (R. 211, 232). As implied by plaintiff's brief, a psychological consultant "can evaluate only mental impairments," 20 C.F.R. §§ 404.1616(d), 416.1016(d), not physical impairments.

The court was unable to locate in the record any medical opinion by any agency physician regarding plaintiff's physical condition or the limitations resulting therefrom. The first exhibit in the "Medical Records" section of the administrative record contains a "CAASE Development Sheet" record apparently

-15-

completed during the state agency review and reconsideration.  (R. 159-62, Ex. 1F).  In that exhibit, there is a "note" prepared by "examiner 011" on Aug. 21, 2002, and appearing in the chronology under the initials "KAR," which states that plaintiff "has no functional restrictions at this time." (R. 160, 161).  Although this exhibit is present in the "Medical Records" section of the administrative record, there is no other indication it is a medical record or that a medical doctor completed, signed, or accepted any portion of this record.  There is no indication that "examiner 011" is a medical doctor, and, in fact, the regulations imply that a disability examiner is not a medical doctor.  20 C.F.R. §§ 404.1615(c), 416.1015(c) (A disability examiner individually may make a disability determination "when there is no medical evidence to be evaluated."  Otherwise, the determination is made by a medical or psychological consultant and a disability examiner.).

Consistently with the information in the "CAASE Development Sheet," the "Notice of Disapproved Claims" explained that plaintiff's right ankle and back pain "do not functionally restrict you at this time," (R. 53) and the "Reconsideration Notice of Disapproved Claims" explained that "medical evidence

-16-

shows some mild arthritis in your ankle but function is not severely affected." (R. 63). Thus, although the initial determination, reconsideration determination, and "CAASE Development Sheet" imply that plaintiff has no exertional limitations, this is not medical evidence and the record does not support the ALJ's finding that the DDS physicians "determined that the claimant has no exertional limitations." (R. 40). Therefore, the ALJ erred in adopting at least this portion of the DDS physicians' opinion, and remand is necessary to properly evaluate the DDS physicians' opinions, recognizing that they are not qualified and did not render a medical opinion regarding plaintiff's physical exertional capabilities.

This determination also requires a finding that the ALJ erred in rejecting the opinion of Dr. McBride. Plaintiff was referred by a treating physician for a "PM&RS consult to evaluate pt with evidence of myopathy on muscle biopsy for ability to be gainfully employed." (R. 305). Dr. McBride performed the "CONSULT PM&RS." (R. 303). Thus, Dr. McBride appears to be a specialist in such consultations. After consultation, Dr. McBride opined: "Able to do sedentary work- restrictions: no prolonged standing >10 minutes, no walking, no ladders, no carrying >5 lbs. for short

-17-

distances, no stooping, squatting." (R. 303).  This opinion is the <u>only</u> medical opinion in the record regarding plaintiff's physical abilities.

The ALJ found that Dr. McBride's opinion is inconsistent with and not supported by the record medical evidence.  However, other than the alleged contrary determination by the DDS physicians, the ALJ cites to no medical evidence contrary to Dr. McBride's opinion.  At the very least the opinion is supported by the biopsy finding of "Skeletal muscle with myopathic features." (R. 300). Moreover, the opinion is consistent with and supported by the record of plaintiff's longstanding complaints regarding lower extremity problems.  (R. 199) (relating problems since 1999). While Dr. McBride is only an examining physician, that is consistent with his position as a specialist to whom plaintiff was referred for a consultation, and does not provide an adequate reason to discount the opinion, especially since Dr. McBride's is the only opinion and there is no other basis in the record to discount it.  Perhaps a consultative evaluation would have been helpful in this regard, but the ALJ did not secure such an evaluation.  He may not reject the opinion merely because he disagrees with it and would not reach the same opinion based upon

the medical evidence.  The ALJ is not a medical doctor and may not substitute his medical judgment for that of a physician.  <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1022 (10th Cir. 1996) (citing <u>Kemp v. Bowen</u>, 816 F.2d 1469, 1476 (10th Cir. 1987)).  Remand is necessary for the ALJ to properly evaluate Dr. McBride's medical opinion.

The ALJ stated he gave the opinion of treating psychiatrist, Dr. LaFrance, "little weight" because he found the opinion overly restrictive and inconsistent with treatment notes indicating that plaintiff's concentration improved and his thoughts were more goal-directed after he began medication.  (R. 40).  As noted above, Dr. LaFrance found plaintiff "markedly limited" in fifteen of twenty mental activities and "moderately limited" in the remaining five mental activities.  (R. 248-49).  The ALJ did not even mention these facts in his discussion.  While the psychiatrist's findings might be seen as a very restrictive view of plaintiff's mental capabilities, the ALJ did not explain why he found the opinion "overly restrictive."  He did not point to specific evidence which is contrary to the psychiatrist's opinion.  As plaintiff pointed out in his brief, the ALJ's conclusory finding is essentially unreviewable by the court.  The court does

-19-

not know what evidence led the ALJ to find the opinion "overly restrictive," because the ALJ did not explain his conclusion.  To review a conclusory finding such as that presented here, the court would be required to weigh the evidence itself and determine based upon its own evaluation whether the opinion is "overly restrictive."  The court is without jurisdiction to make a <u>de novo</u> or independent weighing of the evidence.  <u>White</u>, 287 F.3d at 905.

The ALJ does not explain his finding that the psychiatrist's opinion is inconsistent with the treatment notes.  In stating his finding, the ALJ cites, generally, to Exhibit 10F.  (R. 40).  But, Exhibit 10F comprises fifty pages of the record and consists of treatment notes covering the period from June, 2002 through Feb., 2004.  (R. 250-99).  As plaintiff admits, the treatment notes establish that on Sept. 3, 2002 plaintiff stated "that his concentration is much improved after starting ritalin."  (R. 287); <u>compare</u> (Pl. Br., 26) (citing (R. 213)).[1]  Moreover, he admits that on Jul. 11, 2002, Dr. LaFrance stated "Thought processes more goal directed."  (R. 288); <u>compare</u> (Pl. Br., 26) (citing (R. 218)).

---

[1]The court notes that plaintiff cites to treatment notes appearing in Exhibit 7F, but the same treatment notes appear in Exhibit 10F, the exhibit cited by the ALJ.  <u>Compare</u> (R. 213, 218) <u>with</u> (R. 287, 288).

However, plaintiff also points out that _after_ the visits apparently cited by the ALJ, the record reveals plaintiff continued to have delusions of grandeur and tangential thinking (R. 274-75), and "oddity in communication but this is his baseline." (R. 262).  Moreover, the court notes that in the treatment note in which Dr. LaFrance stated plaintiff's thought processes are more goal directed, he did _not_ state that the goal directed thought processes are the _result_ of taking medication. He also noted that plaintiff is "voicing less delusional beliefs today," which implies that plaintiff was still voicing delusional beliefs although they were less delusional than at previous times. Dr. LaFrance also noted that plaintiff "Stopped taking citalopram and risperdal and he feels the meds curbed his creativity. Ongoing delusions of grandeur that he keeps a lid on, ie designing spacecraft etc." (R. 262).

The ALJ discussed no particular medical evidence when concluding that Dr. LaFrance's opinion should be rejected. Moreover, he failed to discuss the evidence in Dr. LaFrance's treatment notes which tends to support the psychiatrist's opinion and is contrary to the ALJ's conclusion.  This constitutes error in considering the psychiatrist's opinion.  On remand, the

-21-

Commissioner must properly evaluate each medical opinion in light of the record evidence and of this court's discussion above. Moreover, she must evaluate the treating psychiatrist's opinion in accordance with the framework outlined in <u>Watkins</u>, 350 F.3d at 1300-01, as discussed herein.

Because the court determined remand is necessary to properly evaluate the medical opinions, it would be premature to decide whether the ALJ erred in the step two or step three determinations, or in the RFC assessment. A proper evaluation of the medical opinions will likely affect the determination made in each of these issues.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED, and that judgment be entered REMANDING the case pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a

waiver of appellate review.  <u>Hill v. SmithKline Beecham Corp.</u>, 393

F.3d 1111, 1114 (10th Cir. 2004).

Dated this 17th day of November 2006, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**